Good afternoon, ladies and gentlemen. We're here to consider a rehearing en banc in the case of United States v. Dreyer. Mr. Levin. May it please the Court, Eric Levin for appellant, Michael Dreyer. I'd like to reserve five minutes for rebuttal. This country was founded on a tradition of strong resistance to any military intrusion into civilian affairs. This tradition finds expression in our Constitution as well as the laws and regulations governing the military. The panel below honored this tradition and these laws by excluding evidence obtained as a result of a Navy investigation that targeted civilians. The government now asks this Court to disregard that tradition in history and the law and, in effect, condone the military as a new national police force. But as the Supreme Court observed in Laird v. Tatum, nothing in our nation's history gives any indication that the unlawful acts of the military would go unnoticed or unremitied. Mr. Levin, may I ask you what exactly did they violate? Did they violate a statute, a regulation, a policy, or what? All of the above. Which statute did they violate? The statute that governs the ability of the Navy to participate in search, seizures, arrests, or other similar activities that prohibits that conduct is 10 U.S.C. section 375. As a result of that statute, the Congress directed the Secretary of Defense to prescribe such regulations as may be necessary to prevent those kinds of activities. As a result, the Secretary of Defense issued first instructions and later directives. The Secretary of the Navy issued instructions. And ultimately, the Department of Defense issued regulations. So that's why I say it's all of the above. Was there a regulation in place at the time that these activities took place? The regulation was not in its final form. I believe it was announced in 2010 and in its final form in 2013. However, the content of that regulation is in no way different than the instructions and directives that came before it. Has the Navy found that the regulation or their policy was violated? I'm not aware of what the Navy has done. Don't they get the last word on whether their policy or their regulation is violated? Well, I do believe that the Navy is – that the Navy's interpretation of the statute is entitled to some deference. I have no idea of what the Navy – how the Navy views this. I know that in the panel there was some request by the panel to get the input of the military. But once we have a statute that is mandated – that mandates regulations, that is a ground for which this court can suppress evidence. The law is very clear on that. But the statute itself doesn't cover – the statute itself doesn't say surveillance, right? Is there anything in the statute itself that prohibits what Agent Logan did? What the statute literally says is search, seizure, arrest, or other similar activity. And so when, in enacting the regulations, the military included among those prohibited activities in Department of Defense Directive 5525.5, it prohibited surveillance and investigation. And clearly what was happening here was an investigation initiated by the NCIS that was targeting all file-sharing computers within the state of Washington. Is there also a statute that deals with NCIS in particular and that limits its authority to conducting, supervising, coordinating investigations of criminal activity and programs and operations of the Department of the Navy? I'm sorry? Isn't there also a statute that deals directly with NCIS? Could you move the microphone a little closer to you? We can't hear back here. Thank you. Isn't there also a statute that deals directly with NCIS, a statute, and that limits its authority, as I understand it, to conducting, supervising, and coordinating investigations of criminal activity and programs and operations of the Department of the Navy? 7480. Are you referring to 7480? The — well, I'm not sure what statute you're referring to. 7480. I just told you what I'm referring to. I'm sorry. Can you tell me again? 10 U.S.C. 7480. Okay. 7480. Yes. 7480 does authorize the NCIS agents, does give them arrest powers similar to the — When they are conducting, supervising, or coordinating investigations of criminal activity and programs and operations of the Department of the Navy. Yes. That's correct. Which they weren't doing here. But Section C of that statute does require that they be exercised in accordance with the guidelines prescribed by the Secretary of the Navy. And the Secretary of the Navy has given clear guidance here that they are not allowed — the NCIS is only allowed to exercise its authority over — when furthering a Department of Defense or foreign affairs function of the United States. That statute did not create a national police force in the NCIS. What it did is it gave them authority to conduct arrests and other police functions. But it has to be read within the context of all the other limitations that are placed on the NCIS. What happens if they stumble on a civilian in the course of investigating a military person? Well, what — in the most current form, which is 32 CFR 182.6, there is permissible — there is a carve-out for permissible direct assistance. But it has to be in the — when they are furthering that — when the primary purpose of what they're doing is to further a Department of Defense interest. So if there is an incidental benefit, then that is permissible as long as they are remaining intentionally within the confines of their authority. Now, that's entirely different than what we have here. The NCIS agent here knew that his authority was limited to Department of Defense directives, but yet he made no attempt whatsoever to limit his targets to be — Counsel, before you get to him, I want to understand a little bit better how broad this program is. Judge Verzon, in the opinion of our panel, referred to basically a unit, I suppose, of the NCIS. How many people are we talking about? And say the ones that dealt with the state of Washington. How many are we talking about? Ten? Four? A hundred? What are we talking about? Well, all we know is that there were at least two other NCIS agents who were engaged. That can be fairly small. What about nationally? Do we know anything about how big this program is? Well, we do know — what we know is that this particular agent had at least conducted 20 other similar investigations. We know that there were other NCIS agents, at least two, who were similarly conducting these types of things. But are they organized by geographic region or under some command that's organized geographically? Some of this is less than clear. We do know that this particular NCIS agent was sitting in headquarters in Georgia and was investigating in the entire state of Washington. And that there was somebody at the National Center for Children, another NCIS person? That's correct. Well, the NCIS headquarters is located very close to there. But there was a person designated to the National Center for Missing Children or something? They were part of a task force, yes. And there was somebody in the state of Washington who was involved in this as well? Well, we know that — we do know that there is another case out of the Sixth Circuit back in 2008 where an NCIS agent in Washington was investigating chat rooms on Yahoo chat rooms that were involved individuals in the state of Tennessee. So we've seen at least — I mean, what's clear here is that the violation here was widespread. We don't really know how many — we don't know whether this is a nationally directed program, a regional program. What I'm trying to get is some sense of how much of a problem we're dealing with here. We're talking about the Posse Comitatus Act. Is this a lone wolf? Is this a whole army of military people who are prying into the lives of civilians all over the country? What are we talking about here? Well, we do know that this particular NCIS agent indicated that this was his standard practice. In other words, that he had begun this because they had access to this particular software that enabled them to do it, that he had done at least 20 other investigations. But it was over just a few-month period of time, right? He testified that he began doing this in 2010. And he was still doing it at the time of the — as I understood it, at the time of the trial. So it was at least 18, 19 months. That's my understanding. And so we have — what sets this violation apart from virtually every other Posse Comitatus Act case is that most cases begin with a proper investigation, targeting proper targets, those associated with the Department of Defense, the U.S. Navy, or involving facilities of the Department of Defense or some other foreign affairs function of the military. This didn't start like that. This started as a general investigation into illegal activity over file sharing networks. So what is the — what constitutional rights, if any, does the Posse Comitatus Act protect? Well, at the time the original Posse Comitatus Act of 1878 was enacted, there was discussions that really what the act was was no more than an extension of the military to enforce civil laws. In fact, in Padilla v. Rumsfeld, the Second Circuit found that the Third Amendment itself reflected the framers' beliefs or concerns about the need to prevent military intrusion into civilian law. And what all of this draws on goes back even before the Constitution, back to the Declaration of Independence, when one of our — one of the military superior to civil law. And since that time, our country struggled with how to contain the military and keep them both subordinate to civilian law and focused on what their proper role was. And if you look at cases like Youngstown Sheet Tube v. Sawyer, Justice Douglas' concurrence in that case talks about our history and tradition rebelling at the thought that the grant of military power carries with it authority over civilian affairs. Are those concerns that you're describing related to individual rights or some kind of structural concern? And does that matter to whether the exclusionary rule applies? I don't think that it does matter. Well, it doesn't matter to the degree that what we have always said about this is that the only — without having an actual instance, that the only exclusionary remedy is if it were widespread and repeated and so on. In other words, it had to be structural. The violation had to be structural and not simply individual. Isn't that right? That has been the rule, and that was the rule at the time that Section 375 was enacted, that widespread — I mean, Congress was aware of this emerging rule, that widespread and repeated violations. So in that sense, the remedy itself, if we were to approve it, could be structured to be structural in essence. Well, I agree with you that that is the rule, and I don't challenge that rule. I think we prevail under that rule. I believe the question was more oriented as to the dissent in the case, which said, hey, this is a public right, not a private right, and therefore we're not — it doesn't implicate the exclusionary rule. And what I think amici pointed out very well in their brief is that the exclusionary rule is not a personal constitutional right either. The purpose of the rule is to — is not to redress injury, but it's to prevent violations from occurring in the future. Does what you're talking about, if we were to agree with you, as the three-judge panel had, does that create a split in the circuit? Because it seems that the other circuits that have considered this particular issue have consistently held that the creation or application of the exclusionary rule for PCA violations is not appropriate. Well, you know, I've taken a look at a lot of these cases. United States v. Walden, which is probably the first instance. In 1974, the Fourth Circuit did not suppress, but it did say in an instance of widespread and repeated violations it may be appropriate. United States v. Wolfs in 1979 said the same thing out of the Fifth Circuit. In Roberts, this is what the Ninth Circuit was drawing on in Roberts when it found the same thing. And so I don't see — I haven't found a court that said even in the face of widespread and repeated violations there's no remedy. Instead, what I've seen is the opposite, that — Well, then here the government conceded that they got the point by the majority's opinion, and so why isn't that enough? I mean, what — why does it — you know, why should we apply the exclusionary rule here? That's what they said. Well, that argument really calls into question the exclusionary rule in general. Clearly, simply a court telling a party that something is illegal hasn't been found to be enough. The exclusionary rule — where the exclusionary rule is the most efficient way to prevent it from occurring again. Now, in United — So I guess what we have to conclude that they — I mean, they did concede that they now know that that's sufficient to defer — to deter future violations. So should we just not trust what they're saying? Well, I did notice that in the footnote in their on-bank brief they did argue that it has no application over the NCIS. The Posse Comitatus Act doesn't restrict it, and therefore I'm not quite sure that they've gotten the message. However, I would say that in the United States versus Chan, this court said the same thing, that the NCIS is bound by the restrictions of the Posse Comitatus Act, and yet here we are 12 — or, you know, 12 years later, and the same conduct is going on. Counsel, can I — In determining — excuse me. In determining whether or not the exclusionary rule should apply, do we consider whether or not this PCA violation — whether there was bad faith or good faith? It seems that's what Roberts contemplated. I think that the question of whether use of the court's supervisory power to suppress, exclude evidence for statutory violations, one of the questions — or one of the And so to the extent that we have a willful disobedience of the law, that perhaps is maybe at its highest point. Do we have a willful disobedience of the law? I mean, do we — is there any testimony that specifically addressed whether Agent Logan knew that he was violating the PCA? Yeah. Agent Logan testified that he knew his authority to investigate crimes was limited to Department of Navy, its assets, and personnel. Well, he also thought he was able to investigate crimes that might violate the Uniform Code of Military Justice. And I think he said the Federal Code, which I'm not sure I understand. But he thought he was able to apply. And there isn't, I guess, a law that says, you know, child pornography within the Code of Military Justice is inappropriate or criminal. I have no quarrel with that. But it was as it related to the Department of Navy, its assets, and personnel. In other words, he may have the ability to investigate those crimes, but only as to a certain subset group. And he understood that. And we know he understood it because when he caused an administrative subpoena to be issued, he represented that he was conducting his investigation in an area of Department of Defense and U.S. Navy saturation. That's what he said. But we know that's not true. We know that he was conducting an investigation across the state of Washington. Can I ask this as a follow-up to Judge Murguia's question? Is there any context in which – let me preface it by saying let's assume that the exclusionary rule does apply here and that there was a violation. Is there any context where you apply the exclusionary rule, but you don't also apply the good faith exception as that exception has been developed by the Supreme Court? Because if the good faith exception does apply, as you know, it brings in a pretty low or to find that an agent's actions fell outside that. And I guess I'm hearing Judge Murguia say that perhaps even if you're convinced that Agent Logan transgressed his authority, maybe under the Supreme Court standard, a reasonable officer in his shoes could have at least had some doubt. So I'm wondering if you know of a context in which the good faith exception just does not come into play. Well, the – I guess I would answer that by saying that I think there's no indication that there was good faith here. This individual may have testified at the – I believe he testified at the hearing that he believed these kinds of investigations were, in fact, missions of the Navy, which is absurd. So I can't imagine finding good faith. Well, is the law clear? I mean, the Sixth Circuit in that Western District of Kentucky case, which is very similar to this one, said this was fine. So could he not have thought – I mean, there's not a lot – the record here is not very extensive because I don't think this was the point or this was never really truly addressed, this PCA violation down below for the district court. And so to me, the record seems rather sparse, especially when we have to consider whether this was done in good or bad faith. The problem with the case that you're referring to, United States v. Holloway, which the government cites as a reason to find a good faith exception here, that case postdated this case. So to the extent that they're seeking that as reliance or demonstrating good faith, it just seems that it doesn't. But is good faith an objective or a subjective question? I think it has to be reasonable, good faith. So there has to be a certain objective nature of it. He can't just be convinced. But also, the Holloway case didn't consider any of the regulations. It looked to, I believe, the criminal statute and said that since the criminal statute he wasn't directly executing the laws. He was gathering evidence. Therefore, it wasn't a violation. It didn't say that these restrictions didn't govern the conduct of the military. It said that now, if you look at the regulations that were promulgated, that Congress directed the military to promulgate, it's very clear that this conduct is completely not permitted. Go ahead. The regulations, there wasn't actually a regulation. Sorry. Go ahead. With regard to the good faith exception, do you know of any cases in which it was not the officer just doing something, but it was the government as a whole waging a nationwide series of violations repeatedly over a period of time with involvement with a number of other agencies? No. Who do we judge here? Is it the entire program that NCIS was carrying on when we look at good faith, or is it this individual officer who got caught on one occasion? There's no indication that this officer had gotten any approval from any higher up within the department. Isn't there an indication that they were aware of this continuing practice over years, where he conducted 20 investigations nationwide, as were other NCIS officers, and they were coordinating with an NCIS officer assigned to a multi-agency task force? No. And the government has never argued that he had a basis for a good faith. They never introduced any evidence of any kind of good faith exception. Well, the point is the opposite, i.e., that is, if this was not one individual doing this, it was an individual who said he was authorized, did it with two other people, coordinated with another person at this national center and with somebody else in the State of Washington. So it appears to be, what Judge Ronhart is asking you is this, has the good faith rule been applied to a circumstance or has it, isn't it true that it has not been applied to a circumstance in which you have what appears to be an entrenched, long-term, authorized program? I know of no case that has applied the good faith exception to such an entrenched program. Well, let me ask you this. I don't think it matters how many agents were engaged in this. If, under an objective standard, it was unclear whether this was lawful or not, it's neither here nor there if it's one or a hundred. But I guess I'm trying to focus on looking at the state of the law at the time that this agent acted or however many of his cohorts were acting in the same way. Why was it unreasonable for them to think that, you know, we have the authority to investigate child pornography offenses as to military officers. We have this tool that allows us to look at, you know, not private information, but information that the target has shared. But we don't have any way ahead of time of narrowing the focus, as you were saying that he should have. He's just saying, I can't, I don't have any way of just targeting the military folks. I can, my software allows me to look at all the computers in an area. I then figure out, once I've identified specific individuals, if they might have violated the law. And if it turns out that it's not a military person, I hand it off. I don't want anything to do with that. Why was it so clear at the time that he acted that that was unlawful? Well, what was unlawful is that the Department of Defense directives prohibited surveillance and prohibited investigation unless it related primarily to a Department of Defense interest. And if you do not know, if you have no reason to believe that you're investigating something over which you have authority to investigate, that is, the personnel or facilities of the Department of Defense, then you have no justification for doing it. He didn't, there are multiple ways in which this agent could have gone about conducting an investigation. He chose to go about it in a way that was both widespread and completely disregarded any of the limitations that we've placed on the military in terms of what they're allowed to investigate and prosecute. You're saying that, and you would say, I guess, that we know that because he targeted the entire state as opposed to, like, an area right around a military base or something? Is that where you're going with that? I think if he had done, if it were a different situation and he had focused on an area that was indeed saturated with the military or Department of Defense personnel, we might have a different situation. Instead, he focused on the entire state of Washington, as was his common practice. Counsel, if Congress tomorrow amended the PCA to say a violation of the PCA cannot lead to suppression, so no suppression remedy, what happens to your position? Well, my position becomes more difficult because I'm asking this court to exercise its supervisory power. And so the question would then become, could Congress constitutionally take away that authority? And it's not something, you know, the area that you're treading on isn't, not a lot have gone before you. And so the question is a difficult one. We do know from cases like Laird v. Tatum and Youngstown sheet and tube versus Sawyer that there is something else going on here, that this is a fundamental value, that concerns about the military exercising authority over civilian affairs is in a category by itself. And it was for that reason that the Eighth Circuit in Bissonnette v. Hague found that an otherwise lawful search and seizure when conducted by the military was unreasonable under the Fourth Amendment. And I guess the trouble I'm having with your position is that if Congress can amend the PCA, presumably it could repeal the PCA. For the first nearly 100 years of this country's history, there was no PCA, at least spelled out in the code. If that's the case, then I'm having trouble understanding how the right here is so fundamental to be equated with the Fourth and the Fifth Amendments. It implicates constitutional interests. It does it explicitly because it explicitly prohibits search, seizures, arrests, and other similar activity. Those are that it does relate to constitutional interests. And the history of, you know, at the time it was enacted, it was seen as an expression of nothing more than the constitutional limitation of the military over civilian affairs. Do you want to reserve? Thank you. Ms. Bruner? May it please the Court, Helen Bruner on behalf of the United States. The question before the Court is whether the extensive collection of child pornography found on Michael Dreyer's computer should be suppressed because the person who discovered that, Mr. Dreyer, was offering child pornography to users on peer-to-peer software. Counsel, Judge Callahan said that the government has gotten the message. Do you agree the government has gotten the message? And if so, what message did the government get? Oh, I believe very much so, Your Honor. Even though this Court has now taken this case en banc, the NCIS has already, through their general counsel's office, taken a look at this case and limited and put more controls on what agents can do before they can conduct any sort of computer-related activity of this. Well, let me get that specifically. Does the government get the message that whatever restrictions there are apply to the Navy as well as the Army and the Air Force? Well, Your Honor, if you're asking me that what the Navy is doing, I'm responding. No, I'm asking you what the government is doing. I'm asking you the government. If you're asking whether the government is continuing to take the position as a legal matter that NCIS was not subject to the Posse Comitatus Act restrictions, no, we did not give that message. So you are free to continue to do what you did? What I'm saying, Your Honor, is that if this Court ---- No. Just answer that question. Is the Navy free, through its civilian officers, NCIS, to engage in the same conduct that it engaged in in this case? By their own decision, based on a review of the panel's decision, they are not engaging in it. Now, in answer to your question ---- Is it the position of the United States in this case that the Navy is still free to continue to engage in the same conduct, or has it, as Judge Callahan said, gotten the message? Your Honor, if you're asking what the government's litigating position here is ---- No, I'm not asking what its litigating position is. I'm asking, is it the position of the United States that the Navy civilian employees of the NCIS are free to engage in the conduct that was engaged in here in the future? In the future, no. But if I could explain why I'm saying no. There is ---- there are a number of considerations that implicate ---- that are implicated, obviously, beyond the Posse Comitatus Act, which include how much of the NCIS's authority should be used for these kinds of investigations. And for that reason, I say no. But I did want to answer the Court's question. What about the statute I was reading before, 7480, which deals directly with the NCIS, and says that the Secretary of Navy can authorize them to engage in various activities, including arrests without a warrant and so on. Subsection A, that is, that authority applies to any employee of the Department of the Navy who is a special agent of the NCIS and whose duties include conducting supervisory or coordinating investigations of criminal activity in programs and operations of the Department of Navy. Isn't that just a limitation on what special agents of NCIS can do, a statutory limitation? I would disagree, Your Honor, because it has the word including, which, of course, by definition suggests that it can be something else. But in any event, the Department of the Navy itself sees NCIS as having a limitation that at least attaches its investigative authority to Navy-related matters. And if I can, the agent in this case, I think, was clearly saying that the Navy has a reason to investigate child pornography possession by military members or people on a military base. And certainly his activity was directed at that purpose. Now, he used a very blunt instrument. No question about that. It was the only instrument he had at the time. Does that impliedly mean there's a different instrument? I'm over here. I'm over here. Does that mean there's a different instrument? Sorry, Your Honor. That's all right. Does that mean there's a different instrument now? My understanding is he couldn't ratchet back the software. Is that right? He couldn't at the time. And my understanding now is that they actually can limit it to at least postal codes, zip codes, which would help a great deal. But at the time, he didn't have that option. What was your ultimate position on the availability of the exclusionary? I mean, just to start here. I mean, far out to the most extreme situation. Suppose, despite this case and despite the policy that you're suggesting, that next week someone did the same thing. Would we have supervised and it was used in a prosecution, a Federal prosecution. Would we then have supervisory authority to invoke the exclusionary rule? Your Honor, the government would take the position that, no, you should not and you do not, because the exclusionary rule has been limited at least by this Court's rule cases and the Supreme Court's cases to situations where there has been a violation of the Fourth and Fifth Amendment. So you're saying, despite Roberts leaving it open, that the exclusionary rule would never be appropriate. Is that what you're arguing? That's certainly what we are arguing. This Court has never extended it to even violations of statutes where there were no constitutional rights at least implicated by the statute itself. So just so I understand your argument, then you, your first argument would be that the exclusionary rule does not apply to the violations of the PCA or PCA-like restrictions, correct? That's correct. All right. But if the Court, just let's go hypothetically down what, if the Court were not to decide on that, your second set of arguments of why you should not lose would be? Twofold. We, of course, are suggesting that at a, that the agent, let me go to the, do them in reverse order, certainly had a good faith basis for thinking that he could do this. But this was not an individual agent. I mean, the person who did, even he was an individual agent. He involved at least three other or two or three other agents of NCIS in getting this done, right? Certainly. And again, it goes to the military's interest in ending that kind of conduct by military members and individuals. Well, right. But just focusing on an individual person's mindset and those circumstances doesn't make a lot of sense, does it, when it was not an individual person? Well, I kind of want to hear what both arguments are, and then maybe if you could just say what both of them are, then I know that Judge Berzon has other questions. But I want to know, I kind of want to know that. Well, the, what, what I'm attempting to say here is that where you have a situation where there's, it's less than clear that he violated the Posse Comitatus Act type restrictions that were applicable to members of the Navy, and the months after the Chone decision, a couple of things happened. At that point in time, Congress did enact 7480, which Judge Berzon, you've referred to, and it provided broad law enforcement powers to NCIS agents, including arrest authority for any felony cognizable under the laws of the United States, for which they have probable cause. Now, their authority may be limited to investigating matters related to the Navy, but the arrest authority was very, very, very broad. So under those circumstances, I don't think, and the fact that this court's determination finding a violation, if this court were to find one, would be enough to deter the military. It wouldn't require suppression. In answer to Judge Reinhart's question, though, it seems pretty clear to me now that what you're saying is, the answer to his question is yes, that the Navy feels like it has the authority, and whether we use it, it's another matter, but it has the authority to do exactly what was done here. Is that right? If I, if I left you with that impression, I am trying to take the, I guess what I'm trying to say is it has self-limited requirements. That is not the question. You need to answer the question. We understand you're self-limited. We understand you, and quote, get the message, but as a matter of law, isn't the answer to Judge Reinhart's question that the Navy believes that it has the right under the law to do exactly what was done here? The NCIS, and I would make that distinction. Okay, let's say NCIS. It believes, at least until this Court says otherwise, that, yes, it is not subject to the Posse Comitatus Act. Okay, so the answer to the question is yes? Yes. Okay. So, I mean, in terms of Judge Reinhart's question, the position of the United States in this hearing is that it's perfectly legal for NCIS to conduct this kind of activity, but what you're telling us now that they at least have announced that they're going to limit it voluntarily, is that your position? Exactly, Your Honor. So if we announce that, or you're just standing here and telling us? I mean, is this written down anywhere or told to the world or available to any other court, for example? At this point, I don't know that it's publicly available, but I do know that it's gone. It's on the Internet now. It's gone out to the world. Well, it's been broadcast to the world now, so, I mean, if you've said it now, I think it's on the Internet, so. Right. That's correct. And NCIS could change that tomorrow, too. Right. I mean, they could change their policy tomorrow if they chose. They could, but if they wouldn't have, at this point in time, this Court has withdrawn the panel's decision, so they didn't have to reach that question yet, and yet they have. Let's say, just assume that we hold on to Roberts and say that it's still available, the exclusionary rule, although it may not be available here. What would be the remedy that you would suggest? Well, I think the remedy is this Court's decision saying that the PCA does, the type of restrictions do apply and that this conduct should not be engaged in further. So does that mean you would rely, we should rely upon the agency to self-correct? I think if the Court makes that finding, you will have accomplished that. So that's a yes? That's a yes. But what's the enforcement mechanism for that? Well, the agency certainly has its own internal regulations that would then flow from that, disciplinary actions that could flow from that. And they do understand that they have limitations as well, based on their appropriations. Can I just clarify something about your representation? Because it isn't writing, or at least not yet. If it were, it would be useful to submit it somehow. But as to what policy change has been made. But from what I'm hearing you say, it's specifically limited to computer questions. It does not take the position that the NCIS couldn't, for example, go walking down the street and looking for drugs or something. No, but the NCIS has also understood the prior cases of this Court and is attempting to act accordingly, I think. I, you know, I think this is all case. But the agent Logan here understands, said it was his understanding that he was a Federal agent who was able to enforce any law, any Federal law. That's what he understood. And my understanding is that I'm trying to understand whether the revised policy that you're suggesting is narrowly focused on the computer question, or this computer question, or goes beyond that. It goes beyond that in the sense of any sort of cyber-related investigations. All right? But in terms of the NCIS agent's statements, I think that it's certainly accurate that the 7480 makes him a Federal law enforcement officer with arrest and search powers that allow him, at least in respect to matters within his investigative authority, again, related to the Navy. Well, Mark Harmon thinks he has a lot of authority. So, if you watch NCIS. But at least with respect to his investigative authority, it doesn't limit him in terms of the statutes that he can investigate. So I think we're playing with a lot of fringe issues. I mean, it seems to me there's a fairly basic question here that I would really like to know the United States' position on, because there have been good questions asked about good faith, and also about whether there's a need to suppress this evidence. And that depends a lot on what the position of the United States is. Is the position of the United States that the NCIS, whether they're naval or civilian employees, does not have the authority to become a general roving law enforcement agency looking for civilian crimes? Or that it has the authority to seek out civilian crimes and conduct investigations of civilian crimes, whatever they may be and whatever means may be used? Does the government take the position that the NCIS, the Navy, the Army, the Air Force, the Marines, whatever else, that they are limited to conducting military investigations and may not conduct ordinary investigations of civilian crimes? Do they take that position now? Your Honor, in answer to the question, the way you have phrased it is, yes. Well, let me perhaps rephrase it. The NCIS believes its investigative authority is certainly limited to matters pertaining to the military. And in that context, it has law enforcement powers and an ability to investigate violations of federal law, but not broadly as it applies to any civilian in the United States. But it seems to me that the sweep here, this sweep, you described it as a blunt instrument. This was a sweep that consisted of the State of Washington. So there's some military people in the State of Washington. I'm sure there's thousands of them. But still, when you say that that's the limitation, it seems to me to be no limitation at all. Your Honor, I would, as I said, I described it as a blunt instrument for a reason. It was certainly limited to the State of Washington. He attempted not, I mean, he had no other tool available. It is a state with five major military bases, so it's not on... But this is a saturated area, five military bases, and that allows them to sweep the entire State of Washington. Is that the limitation? Well, the limitation was also based on, I would say, to people who use peer-to-peer systems. But why we know he was not attempting to do anything beyond military or enforcing against civilians is by his own action. As soon as he knew that Mr. Dreyer was retired military and now a civilian, he did not take further actions other than to send his report, which left the question of what happened to Mr. Dreyer and what happened to that information entirely to civilian law enforcement. It leads us to another really disturbing part of the record, though. It sounds like there was, I think per Judge Berzon's question, there was a regular affiliate in the National Center for Missing Children. It really sounds like an ongoing program. There is certainly, in most regions, there are now what are called ICAC task forces, Internet Crimes Against Children task forces. NCIS agents are part of those task forces. Again, related to their interest in prosecuting these crimes among military members or people who are on the base. Isn't that true of all crimes? I mean, narcotics must go on on bases as well. Exactly. So, therefore, would the NCIS have the authority to walk down the streets of Seattle because there could be Navy people there and stop and search or do territory stops for drugs? No. They would not, and they do not. What is the difference between that and what happened here? Oh, I think there's a big difference in this way. This activity is more akin, when you're talking about territory stops, of simply observing what goes on. So, if you happen to... Follow people on the streets of Seattle, just random people because they might be in the Navy. They don't know yet. And to see whether they're in high-drug areas to see whether they're buying drugs. And then, if they are, then they stop them and say, are you in the Navy? No. It would still not be that far. I suppose it's more akin to if you saw a drug transaction on the street and you happened to be able to determine who that individual was, or perhaps a better analogy, you'd watch a car weaving back and forth on the street and you got the license plate and you know that there is no Navy-affiliated marks on the car, that you call 911. It's that kind of activity as opposed to... Could they be sent out to do that? Pardon me? Can they be sent out to perform that mission? No. And they do not. I understood your answer, both about 7480 and otherwise, to say that the NCIS does have general authority to seize and arrest for any federal crime. And that... So if you put that together with the assertion that it had the... As I understand it, it had... Our decision aside, it had the authority to do what it did with regards to just looking at, you know, random computers. It seems you have to conclude that it could in fact survey people in general until it knew they weren't in the Navy. No, Your Honor. I don't think so. When I say they have broad law enforcement powers, it does... That's what the statute provided them. They obviously have to exercise those in conjunction with their authority, which is... Their investigative authority, which relates back to the Navy. Now, what I was saying about the officer and why I prefaced it this way is when you're dealing with a young officer who... Or officer, I shouldn't call him an officer. He's a civilian. He's a special agent with the NCIS who is dealing with regulations where they changed since Chone, changing the status of who their reporting status. And they have broad law enforcement powers and an interest in stopping child pornography in the military. What you have here is someone who thinks, well, perhaps I can use that blunter instrument. I don't understand still the answer to the question. He said they joined task forces all over to prevent child pornography or whatever it is. And that's appropriate, he said. And then I said, what about narcotics? There are task forces all over the country on narcotics. Yes, Your Honor. Do you belong to those task forces also? I believe they do. And appropriate cases get referred to them for further investigation. There are cases where military members have been prosecuted for drugs and for child pornography. Every kind of crime. Military members have been prosecuted for every kind of crime. Therefore, NCIS is part of the general law enforcement family, I guess, that sweeps the country looking for crimes. That's where I disagree with the court's characterization. They don't sweep the entire country, but rather... It wasn't just the state of Washington. No, but... There was a case where someone in Washington was sweeping Tennessee, looking for everybody's computer in Tennessee. So you're saying that whatever the law enforcement can do to look for narcotics crimes, the NCIS can be a part of that. The NCIS would have an interest in being a part of task forces so that they can, at that juncture that evidence is developed, no doubt by a number of different agents that impact the military, take that action, take that case and investigate that case. My concern is genuinely with the military, and any suppression would only affect cases against civilians. Why do you even care? In other words, were we to apply exclusionary rule, and your mission is to police the Navy or some other branch of the military, and these are just incidental handoffs to civilian forces, why do you care? Why do we care? Why do you care if the exclusionary rule were applied, since that's not your concern, that's not your jurisdiction, you're focused on the military? Well, you're prosecuting Mr. Dryden. Your Honor, I think that gets actually to the reason that we do care, and that we care probably, if I dare say, more about the remedy and the extent of the remedy than perhaps how broad the NCIS investigative authority is. Say you had a drug house or something like that, and your agent ran into that through checking on the computer. Somebody was doing something, they went there, and there were a whole bunch of civilians that were arrested based upon information that your agent had developed. You feel that is a primary role? It's something that NCIS is so concerned about that you would not want your ability to pass on information to other authorities to interdict it in any way? No, Your Honor. I guess I would answer the question this way. Obviously, from the point of view of the NCIS, they would like it if you said that the PCA did not, or PCA-type restrictions did not apply to them. But that's not the primary concern of the government in this matter. It is creating a remedy where we are talking about a suppression remedy created for a violation of a regulation where there has been no constitutional violation. And if you're taught about it. Let me ask you about why that is. Let's assume you're really concerned about the remedy, and you're willing to make a little overstatement, but you're not as concerned about our adopting a rule that says the NCIS may not engage in this type of general criminal activity. All right? Then we're only talking about the exclusionary rule in this one case. Because once we say that, and you say you'll abide by it, we won't have any more cases. And if we do have more cases in violation of that clear mandate, then you shouldn't worry about the exclusionary rule either. What is it that concerns you so much about the exclusionary rule? Is it just this case? Your Honor. Do you expect we would have future cases where we would have to consider the exclusionary rule? Well, obviously, this case, but leaving that aside, you would be creating a remedy that would allow for application of the exclusionary rule for what is essentially a violation of a regulation and not a constitutional right. That is the concern. But it's really not any regulation. It's a regulation tied to a congressional mandate, tied to a congressional statute, and tied at least structurally to the Constitution, if not to individual rights in the Constitution. I mean, it's very hard to see this expanding beyond this particular very unusual circumstance. Your Honor, I would respectfully disagree that it has any constitutional underpinning. I do recognize that the Fed that passed this in the 1870s thought it did. They kept saying it over and over again. Well, the Fed, the original PCA. The – certainly, the PCA was adopted 100 years after the Constitution, which contained no such restriction. They thought it did, and they were upset, and that's why they put it in. They kept saying that. Well, in that 100-year period, I think the history has shown that on multiple occasions the U.S. Marshals used the military, and that was part of the concern and the cost. But in any event, it did not create the kind of right that we have, individual right for under Fourth and Fifth Amendment. Kagan. But that's true, but the remedy, as at least described in the panel opinion and in Robertson and all the other circuit cases, is not really an individual remedy exactly either, because it doesn't – it only runs in situations in which the violation itself is structural. Let's say the exclusionary rule applies. Should we consider good faith or bad faith of the agent? Well, I think you should because of the nature of this type. If you found a violation here, of the nature of the type of violation that you're looking at, I know counsel will point to Choen, but I think Choen – things did change after Choen. The regulations for the Navy did change. The reporting authority – I'm sorry. The answer to my question is yes, you should. Along the lines of the good faith exception, I mean, are you suggesting that Leon applies in this context? Well, yes. Okay. Now, given that, and you'll have to refresh me, but that was not an argument made to the district court, true? That's correct. And it was not made to the three-judge panel? In briefing? In the briefing, not in those terms, no. Okay. And the change that you're referring to, it's my understanding, is that the phrase is exactly – he's still – the head of NCIS is still a special assistant to the chief of naval operations. Yes, an advisor to chief of naval operations. It doesn't say advisor. It's a special assistant to. That's what it says. It doesn't say advisor. You say advisor, but it doesn't say advisor. And moreover, there is now a board of directors for NCIS, which includes two senior military people. But again, advisory to the Secretary of the Navy. I think we had one more question. Did you have that, Judge Friedman? If we were to look at the good faith exception, should we ask about the good faith of Agent Logan, or should we ask about Shremsher? I think the focus here has been on Agent Logan, and in that sense, I would say the good faith of Agent Logan. I think with respect to Shremsher, there is obviously the Franks issue that was not discussed. Well, putting aside the Franks issue, but as to the PCA, I mean, should we – is the question whether Agent Logan thought that he might be violating the PCA, or a reasonable person in Agent Logan's position should have thought he was violating the PCA? Or is the real question whether the people who did the search at the State level, at the State police level, should have realized that someone else had violated the PCA? I would say it's with respect to Agent Logan, Your Honor. And Judge Callahan had a question. Because certainly, they would not have understood – Shremsher would clearly not have understood that. And so why isn't that helpful to you? Why shouldn't you be saying – It is helpful to us. But then shouldn't the good faith question look at Shremsher? I'm surprised at your answer. Well, I guess I looked at it mostly from the standpoint of who the actor was. Judge Callahan. I just had a procedural question. If – and this is hypothetical – if I were convinced that the exclusionary rule does not apply to the PCA or PCA-like restrictions, would I still have to deal with the Frank issue and the Dawbert issue? Or would that need to be remanded? I noticed Judge – I think Judge O'Scanlan said he would affirm the district court, but the district court doesn't go into a lot of detail on that, but did have a hearing on that. Yes. Your Honor, I think this court, as an en banc court, could deal with those issues or in the alternative remand to the panel. Okay. Thank you. Very good. Thank you very much for your argument. We'll hear rebuttal. Thank you. I just want to touch briefly on two issues. Judge Freeland asked the question of whether the – whether we look at Shremsher or Logan. And I would point out that Logan played a very important part – role in this case quite apart from Shremsher, which is the evidence that he obtained as a result of his investigation was the evidence that under – that proved the 15-year mandatory minimum count. Agent Logan testified at the trial itself in support of the distribution count, which carried the 15-year mandatory minimum. So even quite apart from whether or not Shremsher – whether we look at his good faith as opposed to Logan's, it really – there are two different harms that are going on. But otherwise, I do agree with the government. I think you look at the actor and not derivative. If we thought – I mean, so if we thought Shremsher, though, might have good faith, then would some counts survive and not others? Would we only be reversing that one count? No. I think ultimately what you – what you would do is you would suppress the fruits of the Warren – the fruits of the violation as you would in any other case. I don't think that you can purge the violation simply by handing it off to another individual. That would seem to frustrate the whole purpose of the exclusionary rule. Do you think military police have the right to go to civilian bars and places like that and look for military people who are misbehaving? Ultimately, the question is are they fulfilling a role of the military? Does it actually concern a DOD interest? And the regulations and statutes are very clear. Even before the regulation was enacted, the directives were very clear that we can't use the exception for the primary purpose of furthering a DOD. How about my example? Can they go into a bar on shore looking for sailors who are getting drunk and fighting? Ultimately, the question would be whether that was a subterfuge to avoid the Posse Comitatus Act restrictions. In this case, the investigation was simply too broad. It simply had no basis or no reasonable basis to believe that it was actually fulfilling a DOD, something over which the NCIS had authority. The question is yes. You can go into a bar and look for naval personnel. Ultimately, the question is does it fulfill a DOD purpose? I'm having a hard time distinguishing between a bar and sort of a virtual place where civilians and military people co-mingle. Well, ultimately, the question is are you furthering an interest of the Navy? Oh, is there one difference? So when you go into a bar looking for Navy personnel, you're going to know, I mean, at least if the person's wearing a uniform, whether you have Navy personnel? Ultimately, the question is you have to be – that whatever authority they were given under 7480, they have to be fulfilling a purpose of the military. You are not answering the question. I think it would depend on the bar and it would depend on – they would have to have some indication that there was military there. And that's where this example differs from your example. There was no indication there were any military there. Thank you, counsel. The case just argued will be submitted for decision and will be in recess.
judges: Thomas, Reinhardt, Silverman, Berzon, Callahan, Smith, Murguia, Christen, Watford, Owens, Friedland